**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SALLY ANN HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV902 JAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Sally Ann Hampton ("Hampton") application for

disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.

### I. Background

On January 6, 2010[1], Hampton filed an application for disability benefits. The Social

Security Administration ("SSA") denied Hampton's claim initially on September 21, 2010. (Tr.

91) She filed a timely request for a hearing before an administrative law judge ("ALJ") on

October 14, 2010. (Tr. 99-100) Following a hearing on August 31, 2011 (Tr. 32-79), the ALJ

issued a written decision on November 25, 2011, upholding the denial of benefits. (Tr. 16-31)

Hampton requested review of the ALJ's decision by the Appeals Council. (Tr. 7-8) On March

16, 2013, the Appeals Council denied Hampton's request for review. (Tr. 1-5) Thus, the decision

of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103,

107 (2000).

---

[1] The parties agree on this date. The Court notes that Hampton's application is dated April 9, 2010. (Tr. 144-45)

Hampton filed this appeal on May 13, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 9) Hampton filed a brief in support of her complaint (Doc. No. 13) and the Commissioner filed a brief in support of the answer. (Doc. No. 20) Hampton did not file a reply.

## II.    Decision of the ALJ

The ALJ determined that Hampton had not engaged in substantial gainful activity since the alleged onset date of February 1, 2008 through her date last insured of December 31, 2010. (Tr. 21) The ALJ found Hampton had the following severe impairments: residuals of a cervical fusion and degenerative disc disease, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-22) The ALJ found Hampton's medically determinable impairments of carpal tunnel syndrome, osteoarthritis, degenerative joint disease of the knees, obstructive sleep apnea, fatty infiltration of the liver, irritable bowel syndrome, asthma, trigeminal neuralgia and iron deficiency anemia, had no more than a minimal effect on her ability to perform basic work activities and were thus nonsevere.[2] (Tr. 21-22)

After considering the entire record, the ALJ determined Hampton had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).[3] (Tr. 22) The ALJ found Hampton was capable of performing past relevant work as a chef and caterer and that this work did not require the performance of work-related activities precluded by her RFC. (Tr. 26) Thus, the ALJ concluded that Hampton was not under a disability at any time from February 1, 2008, the alleged onset date, through December 31, 2010, the date last insured. (Tr. 27)

---

[2] The ALJ noted that any diagnosis of fibromyalgia in the record was inconclusive and that even if Hampton was diagnosed with fibromyalgia and it was considered a severe impairment, it would impose no additional restrictions on her that were not already addressed in the RFC. (Tr. 21-22)

[3] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on August 31, 2011. Hampton testified and was represented by counsel. (Tr. 34) Vocational expert Reva Payne also testified at the hearing. (Tr. 72-76)

### 1. Hampton's testimony

At the time of the hearing, Hampton was 47 years old. (Tr. 39) She lives with her husband and two children, ages five and twelve, both of whom have special needs. (Tr. 67-70) She has a GED and graduated from culinary school with a pastry degree and a culinary degree. (Tr. 40, 42) Over the past fifteen years, Hampton has worked as a sous chef, caterer and line cook. (Tr. 43-52)

Hampton testified that she can no longer work due to pain. (Tr. 52) She stated that every morning her pain starts in the top of her head and goes down to her upper jaw. (Id.) The pain also radiates down her left arm and into her elbows. She has to elevate her left arm at night and sleep with a special neck pillow. (Tr. 53) Hampton also testified she has pain in her left leg, that it will drag if she does not keep moving, and that she cannot sit for extended periods of time or walk fast. (Tr. 54, 64) She also has pain in her knees, and her right knee needs to be replaced. (Tr. 54, 59) She sees a neurologist and a pain specialist. (Tr. 54) Hampton has also had some physical therapy. (Tr. 54-56)

Hampton had neck surgery in 2010 but doesn't think it helped her. (Tr. 61-62) She had a virus that resulted in some paralysis on her left side body for three days. (Tr. 62-63) She can move her left side now, but according to Hampton, she still has problems. (Tr. 63)  She has

numbness in her hands and cannot lift more than five pounds. (Tr. 65) She has trouble concentrating and has had some short-term memory loss. (Tr. 65-66) She has no trouble dealing with people. (Tr. 66)

On a typical day, Hampton rests and reads. (Tr. 66) She characterizes herself as a "slow reader." (Id.) She plays with her children and calls her parents. (Id.) Her husband does all of the housework and the shopping. (Tr. 70) She doesn't have any hobbies at this time. (Tr. 71)

### 2. Testimony of vocational expert

With respect to Hampton's vocational history, vocational expert Reva Payne testified that Hampton had past relevant work as a chef, Dictionary of Occupational Titles (DOT) 313.131-014, specific vocational preparation (SVP) of 7, typically performed at light or medium duty; sous chef, DOT 313.131-026, SVP of 8, typically performed at medium duty; caterer, DOT 187.167-106, SVP of 7, typically performed at light to medium about 60% of the time; and cook, DOT 315.361-010, SVP of 6, typically performed at medium duty. (Tr. 73-74)

Payne explained that a chef plans the menu and prepares the meal. A chef may also be involved in ordering and pricing the meals and have some contact with patrons. (Tr. 75) A sous chef works for the chef, actually supervising the kitchen and the staff. According to Payne, a sous chef does more lifting and carrying. (Tr. 74) A cook performs more of the manual labor functions. (Id.)

### B. Medical Records

The ALJ summarized Hampton's medical records at Tr. 21-22, 23-25. Relevant medical records are discussed as part of the analysis.[4]

### IV. Standards

---

[4] The ALJ held the record open for 30 days to receive Hampton's physical therapy records. (Tr. 55, 76)

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V. Discussion**

In her appeal of the Commissioner's decision, Hampton alleges the RFC determination is not supported by substantial evidence because the ALJ failed to accord adequate weight to the

opinion of her treating medical specialist, Dr. Backer.[5] (Doc. No. 13 at 6) Hampton further

argues the ALJ erred in failing to provide specific rationale for rejecting her testimony. (Id.)

**Credibility findings**

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation

of Hampton's credibility was essential to the ALJ's RFC determination. See Wildman v. Astrue,

596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination

regarding her RFC was influenced by his determination that her allegations were not credible.").

Deference is given to the ALJ's conclusion with regard to credibility determinations. Moore v.

Astrue, 572 F.3d 520, 524 (8th Cir. 2009). In evaluating a claimant's credibility, the ALJ should

consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms;

precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and

functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984).  The claimant's

relevant work history and the absence of objective medical evidence to support the complaints

may also be considered, and the ALJ may discount subjective complaints if there are

inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006)

(citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express

credibility determinations and set forth the inconsistencies which led to his or her conclusions.

Id. (citing Hall v. Chater, 62 F.3d 220, 223 (8th Cir.1995)). The Court will uphold an ALJ's

credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart,

392 F.3d 988, 996 (8th Cir. 2005). Here, the ALJ identified several reasons for discounting

Hampton's credibility, including the lack of objective medical evidence (Tr. 23-26), her failure

---

[5] For sake of clarification, the Court assumes that any references to Dr. "Becker" in the ALJ's decision and the
parties' briefing actually refer to Dr. Backer.

to consistently seek treatment for her allegedly disabling impairments (Tr. 23, 25-26), and her activities of daily living. (Tr. 26)

The objective medical evidence showed that in August 2008, Hampton injured her neck and shoulders in a car accident. (Tr. 23, 316) Upon examination, she had pain with movement of her neck, muscle spasms, and decreased range of motion (Tr. 316-317) Her exam was otherwise unremarkable with findings of intact cranial nerves, normal sensation and motor strength, and normal range of motion in her extremities. (Id.) An x-ray of Hampton's neck showed early degenerative disc disease and degenerative retrolisthesis. (Tr. 23, 324) An x-ray of her back showed mild degenerative spondylosis. (Tr. 323) The examining physician assessed a sprained neck and dorsal, prescribed pain medication and instructed Hampton to follow-up with her primary care provider. (Tr. 317)

In December 2009, Hampton went to the hospital with complaints of acute pain, weakness, and swelling in her fingers. (Tr. 23, 238-53) A physical examination showed her back was nontender with normal alignment and range of motion. (Tr. 251) Hampton had poor grip strength but normal range of motion, normal motor strength, no swelling, and no deformity in her extremities. (Id.) The examining physician assessed acute pain and fibromyalgia. (Tr. 238) He adjusted her medication and referred her to Linda Hunt, M.D., a rheumatologist. (Id.)

In January, 2010, Hampton presented to Dr. Hunt with slight diffuse puffiness in her hands,; her wrists and fingers had no swollen or tender joints. (Tr. 23, 429-30) She also had some mild tenderness in her knees and left ankle and several fibromyalgia trigger points, but her exam was otherwise unremarkable. (Tr. 429-30) Dr. Hunt assessed possible reactive arthritis or fibromyalgia and recommended further testing. (Tr. 429) Hampton did not follow-up with Dr. Hunt until January 2011 – a year and a half after her initial examination. (Tr. 427)

In March 2010, x-rays of Hampton's back showed mild abnormalities including, facet arthropathy in her lumbar spine, multilevel thoracic spondylosis, and small disc protrusions in her thoracic spine and a right foraminal disc protrusion at L4-L5. (Tr. 224-26) Hampton saw neurologist, Robert Backer, M.D., the following month. He determined Hampton did not need surgical intervention and referred her to Stephen Smith, M.D., a pain management physician. (Tr. 460)

Hampton saw Dr. Smith in April 2010. (Tr. 24, 341-42) At that time she walked with a limp because of pain in her knee and low back, but had normal motor strength, no sensory deficits, no trigger points, and normal reflexes. (Tr. 342) Dr. Smith prescribed Neurontin and recommended Hampton start physical therapy and undergo a nerve conduction study. (Tr. 342) The nerve conduction study revealed mild carpal tunnel syndrome in Hampton's right upper extremity, early/mild bilateral ulnar neuropathies at the elbows, and mild axonal sensory neuropathy. (Tr. 223) When Hampton followed up with Dr. Smith the following month, she reported her pain had decreased by 50 percent with medication and physical therapy. (Tr. 24, 343) Hampton continued to follow up with Dr. Smith and by August 2010, reported 90 percent improvement from her pain with medication and epidural injections. (Tr. 345-51, 374-402) In February 2011, Hampton reported her range of motion and function had significantly improved. (Tr. 24, 383) As a result, the ALJ found it significant that her physical condition improved with medication (Tr. 26, 345-51, 401). See Wildman, 596 F.3d at 965 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")

When Hampton followed up with her rheumatologist, Dr. Hunt, in June 2011, she had an unremarkable physical examination. (Tr. 427) Dr. Hunt assessed osteoarthritis in Hampton's hands and feet and explained that Tylenol alone might provide her with adequate relief. (Tr. 427)

See Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (ALJ could discount the claimant's complaints of disabling pain based on her use of over-the-counter pain medication). She also encouraged Hampton to lose weight as a way of managing her knee problems. (Tr. 427)

In further evaluation of the objective medical evidence, the ALJ noted that Dr. Backer did not recommend Hampton have surgery (Tr. 24-25, 450, 460) and that Hampton chose to proceed with the discectomy procedure in December 2010 on a purely elective basis. (Tr. 24-25, 447-51) This illustrates an inconsistency between Hampton's subjective complaints and the objective medical evidence. See Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.").

In summary, the objective medical evidence discussed above did not support the degree of severity alleged. See Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary"; 20 C.F.R. § 404.1529(c)(2).

The ALJ further found Hampton's credibility undermined by her failure to consistently seek treatment for her allegedly disabling impairments. (Tr. 23, 25-26, 427) For example, despite her complaints of disabling pain, Hampton did not follow up with her doctor's recommendation that she undergo further testing for possible reactive arthritis or fibromyalgia. (Tr. 23, 25-26, 427) Indeed, Hampton did not follow up with her doctor for a year and a half. (Tr. 23, 26, 427) Thus, the ALJ properly considered evidence that Hampton failed to receive follow up treatment from her arthritis and pain symptoms in evaluating the credibility of her subjective complaints. (Tr. 26) See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997) (complaints of functional limitations are inconsistent with a claimant's failure to seek regular treatment for her symptoms).

Finally, the ALJ considered Hampton's activities of daily living. (Tr. 26). Hampton reported problems attending to her personal care and preparing meals for her family. (Tr. 23, 176-77) She also reported difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, sitting, climbing stairs, seeing, completing tasks, and using her hands. (Tr. 180) She could walk 1 to 2 blocks before needing to rest for 15 minutes. (Id.) However, Hampton also reported that she drove, performed household chores such as loading the dishwasher, and shopped for food once a week for 30 minutes. (Tr. 177-78, 184) She cared for her children, both of whom have special needs, and homeschooled them. (Tr. 26, 240, 430) Although these activities do not necessarily equate to substantial gainful activity, they are inconsistent with Hampton's allegations of disabling limitations. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (claimant's ability to care for his family, perform household chores, drive a car, visit friends, plays games such as dominoes and cards with his friends, play catch with his son, pay bills, and follow the instructions, were inconsistent with allegations of disabling impairments).

The Court finds the ALJ's decision substantively and adequately covered the relevant considerations under Polaski and that the ALJ's determination of Hampton's credibility was supported by the record as a whole. Accordingly, the Court will defer to the ALJ's credibility finding. See Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007); Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003) (questions regarding a claimant's subjective testimony are "primarily for the ALJ to decide, not the courts").

**RFC finding**

Hampton further argues the ALJ failed to give controlling weight to Dr. Backer's opinion that she is disabled. On August 19, 2011, Dr. Backer completed a Physician Statement identifying Hampton's symptoms: fatigue, difficulty walking, neck and back pain, sensitivity to

extreme temperatures, extremity pain/numbness, and loss of manual dexterity. (Tr. 467-468) Dr. Backer noted Hampton had problems reaching, handling, and fingering and could use her hands, fingers, or arms for about an hour. (Tr. 467) He opined that Hampton could not perform repetitive lifting, but could lift less than 10 pounds frequently and occasionally. (Tr. 467) She could stand or walk for less than two hours and must periodically alternate between sitting and standing to relieve pain and discomfort. (Tr. 468) Dr. Backer also noted Hampton was limited in her ability to push or pull with her extremities and that her pain, fatigue, and other symptoms were severe enough to interfere with her attention and concentration "all of the time" because her "pain never stops." (Tr. 468)

A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id.

In evaluating Dr. Backer's medical opinion, the ALJ determined it was not entitled to controlling weight because it was inconsistent with the objective medical evidence, discussed in detail above. (Tr. 25, 450, 460). See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). More specifically, the ALJ found that the "extreme" limitations set forth in Dr. Backer's medical opinion were not supported by his treatment notes. (Tr. 25) For example, his treatment notes from April and November 2010 showed Hampton did not have any focal neurological signs, her lumbar spine looked "quite good," and she did not need surgical intervention. (Tr. 450, 460)

Upon review of the record, the Court concludes that the ALJ properly evaluated Dr. Backer's medical opinion, listing "good reasons" for giving no weight to Dr. Backer's medical opinion. (Tr. 25, 447-48) "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, 2014 WL 2968815, at *2 (E.D.Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000)). More importantly, the ALJ provided a detailed narrative discussion of how the medical facts and non-medical evidence supported her finding (Tr. 23-26). The Court finds, therefore, that the decision of the ALJ to discount the opinion of Dr. Backer is supported by substantial evidence on the record as a whole.

## VI. Conclusion

Based on the foregoing, the Court finds the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.

A separate Judgment will accompany this Memorandum and Order.


Dated this 30th day of September, 2014.


_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**